__Brian____ Kirby #165484
A.S.P.C. Buckeye—Rast Max
P.O. Box _____
Buckeye, AZ_____

FILED ___ LODGED
___ RECEIVED ___ COPY
DEC 15 2023
CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| __Brian__ KIRBY, ) | MOTION REQUESTING INJUNCTIVE RELEIF |
| Plaintiff, ) | AND TEMPORARY RESTRAINING ORDER |
| V. ) | AGAINST DEFENDANTS |
| RYAN THORNELL, et, al., ) | CASE No. CV23-02619-PHX-SPL--MTM |
| Defendants. ) | |

This is a civil rights action filed by Mr. __Brian__ Kirby, a state prisoner, for damages and injunctive relief under 42 U.S.C. 1983, alleging deliberate indifference to a serious medical (Mental Health) need in violation of the Eighth Amendment to the United States Constitution. Plaintiff seeks injunctive relief and states the following in support of need:

Upon the supporting declaration of the plaintiff and this memorandum of law the plaintiff request this honorable Court ORDER that Defendants Ryan Thornell and Naphcare show cause why a preliminary injunction should not issue pursuant to Rule 65(a), Fed.R.Civ.P., enjoining the said defendants, their successors in office, agents, and employees and all other persons acting in concern and participating with them, to provide a medically appropriate course of mental health treatment to the plaintiff designated to restore and maintain the full function of his physical and mental well-being.

And further ORDER that effective immediately, and pending the hearing and determination of this matter, defendants Ryan Thornell and Naphcare shall arrange for the plaintiff to be immediately transferred to the ADCRR's Mental Health Residential Treatment Program that will restore and help maintain the plaintiff's full function of his physical and mental well-being.

And further ORDER that the order to show cause, and all other papers attached to this application, shall be served on defendants Ryan Thornell and Naphcare by the U.S. Marshal services.

1

THIS DOCUMENT IS NOT IN PROPER FORM ACCORDING TO FEDERAL AND/OR LOCAL RULES AND PRACTICES AND IS SUBJECT TO REJECTION BY THE COURT.
REFERENCE _LRCwP 5.4__ 9.0.23-19
(Rule Number/Section)

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION

FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

A. STATEMENT OF THE CASE.

This is a civil rights action filed by Mr. Brian Kirby, a state prisoner, for damages and injunctive relief under 42 U.S.C. 1983, alleging deliberate indifference to a serious medical (Mental Health) need in violation of the Eighth Amendment to the United States Constitution.

B. STATEMENT OF FACTS.

1. Plaintiff, Mr. Kirby was determined as being a "Seriously Mentally ill" (SMI) individual; during his trial, in which Mr. Kirby is currently serving time on the trial conviction within the Arizona Dep't of Correction Rehabilitation and Reentry (ADCRR). The Superior Court Judge ordered the plaintiff to undergo a thorough Psychological evaluation and appointed Dr. Donna L. Robinson, PH.D., to complete the evaluation. See Case No. CR-2013-01293.

2. Dr. Robison determined that the plaintiff met the statutory eligibility determination for being seriously mentally ill (SMI) and classified the plaintiff to be SMI by virtue of Dr. Robison's diagnosis of the plaintiff which is as follows:
   a. Bipolar 1 Disorder.
   b. Current Depressive episodes, Severe with Mood Congruent Psychotic Features.
   c. Post-Traumatic Stress Disorder (PTSD).
   d. And Agoraphobia.

3. These diagnosis causes Mr. Kirby to exhibit extreme emotional and behavioral functioning that is so impaired, it severely interferes substantially with his capacity to remain in the general prison population and continues to place the plaintiff under a life threating risk of suicide and constant thoughts of self-harm. As well as possess a significant risk to the general prison population from plaintiffs Mood Congruent Psychotic Features.

4. The Combination of plaintiff's diagnosis and mental health issues have resulted in the plaintiff being housed in solitary confinement for close to ten years due to plaintiff's episodes of mood congruent psychotic features and extreme manic episodes caused by the plaintiff's Bipolar disorder and flash backs/hallucinations which resulted in the plaintiff assaulting several inmates including stabbing two inmates 22 times during a psychotic paranoia episodes.

5. A mitigation specialist "Mr. Lee Brinkmoller" was appointed during the plaintiffs' criminal trial. Mr. Brinkmoller took it upon himself to call the Deputy Warden at the Rast-Max unit of the Ariz. Dep't of Corrections due to his concern for the plaintiff's well-being and informed the deputy warden that Plaintiff was in-fact determined to be an SMI individual. Mr. Brinkmoller recommended to the deputy warden that the plaintiff Mr. Kirby be evaluated for placement in the Arizona Dep't of Corrections mental health residential treatment program/unit.

6. Plaintiff was sentenced to a natural life sentence. This has caused the plaintiff to deteriorate mentally; Plaintiff has been suffering from visual and audio hallucinations and extreme paranoia. The plaintiff has been contemplating Suicide and has been having strong urges to self-harm. Plaintiff has no motivation or physical strength, and finds him-self sleeping all day. Plaintiff has no desire for food and has lost 30 lbs., due to loss of appetite and lack of eating.

7. The Deputy Warden of Rast-Max informed defendant Astrada that she needed to evaluate the plaintiff. Plaintiff was evaluated by defendant Astrada at the Rast max unit. During this evaluation the plaintiff provided Dr. Astrada with extensive documentation in which supported plaintiff's need for treatment offered by ADCRR's Mental Health Residential Treatment Program. The provided document consisted of the thorough Psychological Evaluation Report of the plaintiff which was done by the Court appointed Doctor (Dr. Robison).

8. Defendant Astrada informed the plaintiff that she is entering plaintiff's SMI status into his medical file and adding the SMI status to the ADCRR's AIMS system. Defendant Astrada recommended the plaintiff to be transferred to the Rincon's specialized residential treatment unit by submitting a referral packet. Defendant Astrada informed the plaintiff that the referral was approved by Central Office and by the mental health administrative staff.

9. On June 7th or 8th, 2023 the plaintiff was informed by correctional officers that he needed to pack his property because he would be transferred to the specialized residential mental health treatment program/unit located at the Tucson complex, Rincon unit of the Arizona Dep't of Correction.

10. The following day after plaintiff was told to pack his property and that he would be transferred to the specialized residential mental health treatment program/unit. Plaintiff was picked up from the Rast Max unit for transportation. However the plaintiff was not taken to the specialized residential mental health treatment program/unit located at Tucson complex, Rincon unit. Instead the plaintiff was transferred to the Buckley unit.

11. Once plaintiff was housed in the Buckley unit. Plaintiff was confused and not understanding as to why he did not get taken to the mental health residential treatment program/unit. Plaintiff started having an extreme mental break-down and had to talk to the mental health psychologist at the Buckley unit.

12. On June 14, 2023, Plaintiff was once again insured by the mental health psychologist at the Buckley unit that he was going to the residential mental health treatment program located at the Rincon unit in Tucson Arizona.

13. Plaintiff was transferred once aging, this time plaintiff was picked up at the Buckley unit and taken to Browning unit on or around the end of June or the beginning of July of 2023.

14. Once again the Plaintiff became confused and not understanding as to why he did not get taken to the mental health residential treatment program/unit. Plaintiff started having another extreme mental break-down. Plaintiff attempted to reach out to the mental health staff located at the Browning unit, but struggled to be seen.

15. Defendant Angela Rossetto was the assigned psychologist at the Browning unit. During the very short time that the plaintiff was housed at Browning, he was only seen a couple of times each time the plaintiff was seen by defendant Rossetto the conversations were very brief and met with hostility and unprofessional conduct.

16. Defendant Rossetto informed the plaintiff that he was brought to Browning unit so that his SMI status could be stripped and taken away due to administration from the security side not wanting the plaintiff out of a maximum custody unit due to plaintiff's disciplinary history.
Plaintiff asserts: Security should not be allowed to interfere with needed mental health treatment based on the individual's disciplinary history.

4

17. Defendant Jennie Davis; is the Administrative Assistant at the Browning unit for the Arizona Dep't of Corrections. She is one of the participants who had informed the mental health staff at the Browning to strip the plaintiffs SMI status.

18. Defendant Ashley Pelton who is the Mental Health Director. Defendant Bianca Mocha who is the Regional Psychology Associate – Southern Region. Defendant Katie Masters who is the Southern Region's Mental Health Director. Defendant: Jennifer Nanson and defendant Beard are both the lead Mental Health person(s) for Browning unit. And Defendant Angela Rossetto who is the Mental Health Psychologist at Browning unit. These stated defendants decided to work with (Security) defendant's unknown John Doe who is the regional director; defendant Jennie Davis who is the administrative assistant at the Browning unit; defendant Adam Young who is the deputy Warden of Browning unit; defendant Kevin McClellan; who is the lieutenant at the Browning unit. And Defendant: Megan Godlevsky who is assigned as the correctional Officer III (C.O.-3) for the mental health program at Browning unit. By doing what these stated security defendants told the mental health defendant to do: strip and take away the plaintiff's SMI status for non-mental health/medical reasons.

19. Plaintiff was stripped of his mental health SMI status just so he could be transferred back to the Rast-Max unit which is a maximum custody unit and is considered to be solitary confinement. This was done by the defendant's because they know of the permanent injunction placed on them which states: No prisoner designated as Seriously Mentally ill (SMI) shall be housed in maximum custody, or otherwise kept in a cell for more than 22 hours each day.

20. Once back at the Browning unit plaintiff seen defendant Astrada and asked her why his SMI status was stripped and taken away from him. Defendant Astrada informed the plaintiff that is was securities administrative staff interfering with his mental health treatment and that she (Astrada) received a verbal reprimand for giving the plaintiff his SMI status and that the plaintiff was sent to the Browning unit by security so that security could get Browning unit's mental health staff to take away his SMI status.

21. Plaintiff Asked defendant Astrada is she would reinstate the plaintiff SMI status and she stated that she could not do so because she could lose her job for going against her administrative staff and she was not willing to do so.

22. Since Defendant Astrada refused to reinstate the plaintiff's SMI status the plaintiff has went on to deteriorate mentally and has had incidents of becoming delusional. The plaintiff was seen by Doctor Kent for his symptoms of delusions and was diagnosed as schizophrenic and as having a schizoaffective disorder. Plaintiff was placed on a powerful antipsychotic medication called: Invega. This medication has helped the plaintiff. However the plaintiff continues to extremely suffer mentally and physically due to being a severely mentally ill individual who is being forced to live and stay in solitary confinement. The plaintiff continues to have no self-worth, suicidal thoughts, thoughts of self-harm, loss of weight, no appetite, issues of fatigue, loss of motivation, paranoia episodes and just feels like his life has flat-lined and has no meaning to it.

23. The plaintiff felt like there was a glimmer of hope when Dr. Astrada advocated for the plaintiff and put in a referral for the plaintiff to be a participant in the mental health residential treatment program. The plaintiff was hopeful because he has heard nothing but good things about the program and felt like he could obtain the life skills and tools needed to be able to function at a bearable level and obtain hope again. But this was SHATTERED (Shattered Dreams) by the defendants for unjustifiable reasons.

24. The plaintiff knows for a fact that there are other inmates who in fact are current participants in the mental health residential treatment program which have extensive disciplinary history. Such as inmate Hugo # 256698 that has killed another inmate by stabbing the inmate in the face and neck 56 times. There are other inmates who have multiple staff assaults, some resulting in serious physical injuries, plus multiple inmates who have serious inmate assaults on their disciplinary history; therefore plaintiff's disciplinary history should have no supportive value to keep the plaintiff from his needed treatment.

25. Plaintiff submitted a medical grievance to have his complaint of having his SMI status stripped from him for non-medical reasons and addressed the fact that he is not being provided with his needed mental health treatment. Defendant: Rebecca Fielder is assigned as the medical grievance liaison and responsible for investigating and correcting medical issues. Defendant Fielder stated the following in her response to the plaintiff's grievance: SUMMARY OF COMPLAINT: in your grievance written on 7/28/2023 and received by medical on 8/15/2023 (way out of timeframes) you mentioned that you were diagnosed with SMI and when transferred to another facility, they took your SMI status away from you; INMATE PROPOSED RESOLUTION: Per your grievance you mention that you would like to have the diagnoses of SMI back on your records; INVESTIGATIVE ACTION: Review of electronic medical records, to include consults, medications, labs, scanned documents (Superior Court Doctors determination of SMI)and providers notes; FINDINGS AND DECISION: Per review of your medical records, you were seen in various visits from mental health professionals. You will not be able to reevaluate for six months. This will occur around February 2024. If you continue to have medical concerns continue to follow the HNR process.

    C. POINT ONE: THE PLAINTIFF IS ENTITLED TO A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION.

1. In determining whether a party is entitled to a temporary restraining order and or a preliminary injunction, Courts generally considered several factors: whether the party will suffer irreparable injury, the balance of hardships between the parties, the likelihood of success on the merits, and the public interest. Each of these factors favors the grant of this motion.
   a. The Plaintiff is threatened with irreparable Harm.

   1. The Defendants in this case knows the Plaintiff, Mr. Kirby was determined as being a "Seriously Mentally ill" (SMI) individual; during his trial, in which Mr. Kirby is currently serving time on the trial conviction within the Arizona Dep't of Correction Rehabilitation and Reentry (ADCRR). The Superior Court Judge ordered the plaintiff to undergo a thorough Psychological evaluation and appointed Dr. Donna L. Robinson, PH.D., to complete the evaluation.

2. The Defendants know Dr. Robison determined that the plaintiff met the statutory eligibility determination for being seriously mentally ill (SMI) and classified the plaintiff to be SMI by virtue of Dr. Robison's diagnosis of the plaintiff which is as follows:
    1. Bipolar 1 Disorder.
    2. Current Depressive episodes, Severe with Mood Congruent Psychotic Features.
    3. Post-Traumatic Stress Disorder (PTSD).
    4. And Agoraphobia.
3. The Defendants know these diagnosis causes Mr. Kirby to exhibit extreme emotional and behavioral functioning that is so impaired, it severely interferes substantially with his capacity to remain in the general prison population and continues to place the plaintiff under a life threating risk of suicide and constant thoughts of self-harm. As well as possess a significant risk to the general prison population from plaintiffs Mood Congruent Psychotic Features.

4. The Defendants knows the Combination of plaintiff's diagnosis and mental health issues have resulted in the plaintiff being housed in solitary confinement for close to ten years due to plaintiff's episodes of mood congruent psychotic features and extreme manic episodes caused by the plaintiff's Bipolar disorder and flash backs/hallucinations which resulted in the plaintiff assaulting several inmates including stabbing two inmates 22 times during a psychotic paranoia episodes.

5. The Defendants knows that Defendant Astrada informed the plaintiff that she is entering plaintiff's SMI status into his medical file and adding the SMI status to ADCRR's AIMS system.

6. The Defendants knows that Defendant Astrada recommended the plaintiff to be transferred to the Rincon's Mental Health specialized residential treatment unit by submitting a referral packet.

7. The Defendants knows the referral was approved by Central Office and by the mental health administrative staff.

8. The Defendants know the plaintiff was not taken to the Rincon's Mental Health specialized residential treatment unit after being approved to go. But decided to have the plaintiff transferred to the Browning unit so that the plaintiff's SMI status could be stripped away by medical staff that allows security to dictate individual's treatment plans.

9. The plaintiff alleges that the above information shows defendants had knowledge of facts and despite the knowledge they refused to act to/for the plaintiff's needed mental health treatment and decided to use the plaintiff's disciplinary history against him as their reason to deny the plaintiff and subject the plaintiff to the continuation of solitary Confinement despite the fact that the solitary confinement is exacerbating his symptoms of his diagnosis and is extremely detrimental to the plaintiff physical and mental health well-being as well as his safety. Such conduct by prison officials is clearly a violation of the Eighth Amendment to our Constitution.

10. The fact Mr. Kirby continues to exhibit extreme emotional and behavioral functioning that is so impaired, it severely interferes substantially with his capacity to remain in the general prison population and continues to place the plaintiff under a life threating risk of suicide and constant thoughts of self-harm is in fact the definition of IRREPARABLE HARM.

As a matter of law, the Continuing deprivation of constitutional right constitutes irreparable harm. See Elrod v. Burns, 427 U.S. 347, 373, 96 S. Ct. 2673 (1976); American Trucking Association, Inc. v. City of Las Angeles, 559 F.3d 1046, 1058-59 (9th Cir 2009). This principle has been applied in prison litigation generally, see Jolly v. Coughlin, 76 F.3d 468, 482 (2d Cir. 1996); Newsom v. Norris, 888 F.2d 371, 378 (6th Cir. 1998); Mitchell v. Cuomo, 748 F.2d 804, 806 (2d Cir. 1994); McClendom v. City of Albuquerque, 272 F.Supp. 2d 1250, 1259 (D.N.M. 2003) and specifically in prison medical care cases, Philips v. Michigan Dep't of Corrections, 731 F.Supp, 792, 801 (W.D. Mich. 1990), aff'd, 932 F.3d 969 (6th Cir. 1991).

D. THE BALANCE OF HARDSHIPS FAVORS THE PLAINTIFF.

1. In deciding whether to grant TRO's and preliminary injunctions, Courts ask whether the suffering of the moving party if the motion is denied will outweigh the suffering of the non-moving party if the motion is granted. See Mitchell v. Cuomo, 748 F.2d 804, 806 (2d Cir. 1994) (holding that dangers posed by prison crowding outweighed states financial and administrative concerns); Duran v. Anaya, 642 F.Supp. 510, 527 (D.N.M. 1986) (holding that prisoners' interest in safety and medical care outweighed state's interest in saving money by cutting staff).

2. In this case, the present mental health suffering of the plaintiff and his potential suffering of physical self-harm, even death by suicide are enormous. The sufferings the defendants will experience if the court grants the order will consist of transferring the plaintiff to the mental health residential treatment program/facility/unit, which is a daily occurrence that ADCRR transport's inmates within the state of Arizona to and from facilities and units. There is numerous bed's available at Tucson complex Rincon unit's mental health treatment program as ADCRR has recently cleared out an entire building of IHP inmates so that they can turn the building in to being a part of the mental health program. The defendants' hardship amounts to no more than business as usual.

E. THE PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS.

1. The plaintiff has a great likelihood of success on the merits. What defendants have done – intentionally interfering with [medical/mental health] treatment once prescribed – was specifically singled out by the Supreme Court as an example of unconstitutional deliberate indifference to prisoners' medical/mental health needs. See Estelle v. Gamble, 429 U.S 97, 103 (1976).
To prevail on an Eighth Amendment medical care claim, a prisoner must demonstrate "deliberate indifference to serious medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing Estelle v. Gamble)).
There are two prongs to this analysis: an objective prong and a subjective prong. First, as to the objective prong, a prisoner must show a "serious medical need." Jett, 439 F.3d at 1096 (citations omitted).
A "'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'" Mc.Guckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir 1997) (en banc) (internal citation omitted).

Second, as to the subjective prong, a prisoner must show that the defendant's response to that need was deliberately indifferent. Jett, 439 F3d at 1096. An official acts with deliberate indifference if he "knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. 825, 837 (1994). To satisfy the knowledge component, the official must both "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. "Prison officials are deliberate indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment," Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002) (internal citations and quotation marks omitted), or when they fail to respond to a prisoner's pain or possible medical need. Jett, 439 F.3d at 1096.

The plaintiff, Brian Kirby has stated the facts in which the defendants were aware of and have shown the actions of the defendants were a clear disregard to the plaintiffs mental health need and therefore will clearly show plaintiff is likely to succeed on the merits of this case.

### F. THE RELIEF SOUGHT WILL SERVE THE PUBLIC INTREST.

1. In this case the grant of relief will serve the public's interest because it is always in the public's interest for prison officials to obey the laws, especially the Constitution. See Phelps –Roper v. Nixon, 545 F,3d 685, 690 (8th Cir. 2008); Duran v. Anaya, 642 F.Supp. 510, 527 (D.N.M. 1986) (Respect for laws, particularly by officials responsible for the administration of the state's correctional system, is in itself a matter of the highest public interest); Llewwlyn v. Oakland County Prosecutor's Office, 402 F.Supp. 1379, 2393 (E.D. Mich. 1975) (stating the Constitution is the ultimate expression of the public intrest).

For these above stated facts the plaintiff request this honorable court gran said motion and provide a temporary restraining order and order a preliminary injunction against the defendants in this case.

Document generated on this 9th day of December, 2023.

_Brian_ Kirby

_Brian Kirby_